UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| The Pan-Albanian Federation of America Vatra (The Hearth) Inc., <br><br> PLAINTIFF, <br><br> v. <br><br> Valentine Lumaj, <br><br> DEFENDANT. | ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Civil Action No. |

**COMPLAINT AND DEMAND FOR TRIAL BY JURY**

NOW COMES the Plaintiff, The Pan-Albanian Federation of America Vatra (The Hearth) Inc. ("Plaintiff" or "VATRA"), establishing claims, as set forth below, against Defendant Valentine Lumaj ("Defendant" or "Lumaj").

**PARTIES**

1. The Pan-Albanian Federation of America Vatra (The Hearth) Inc. is a corporation duly incorporated pursuant to the laws of the Commonwealth of Massachusetts and which maintains its principal place of business located at 778 Huntington, Avenue, #6, Boston, Massachusetts, County of Suffolk.

2. Defendant Valentine Lumaj is an individual who resides at 37471 Cherry Hill, Farmington Hills, Michigan.

**JURISDICTION AND VENUE**

3. Subject matter jurisdiction is proper under 28 U.S.C. § 1331 over Plaintiff's trademark infringement and false designation claims under 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a), because the claims arise under the laws of the United States.

4.      Subject matter jurisdiction of this Court is also properly based upon the existence of complete diversity between the parties and an amount in controversy which exceeds $75,000 exclusive of costs and interest pursuant to 28 U.S.C. § 1332.

5.      Personal jurisdiction over Defendant is lawful and proper here as Defendant engaged in tortious conduct which caused injury in Massachusetts. The false and defamatory statements by Defendant were directed at an entity and individuals in Massachusetts and caused damages to Plaintiff in Massachusetts.

6.      Venue for this action properly lies in this district pursuant to 28 USC § 1391, because a substantial part of the events giving rise to the claims in this action occurred in this District.

## SUMMARY OF CASE

7.      Plaintiff VATRA's claims arise from the false and defamatory statements published to the public by Defendant Lumaj, in which some of the false and defamatory statements included Defendant's unauthorized used of the VATRA trademark, causing Plaintiff to suffer damages as a result.

## FACTUAL ALLEGATIONS

8.      VATRA is an internationally recognized and highly esteemed non-profit organization founded in Boston, Massachusetts in or about 1909 with a mission to promote and preserve the Albanian culture and history, and support Albanians and American Albanians globally. VATRA has several local chapters throughout the United States.

9.      VATRA has, among many other notable endeavors, successfully maintained the *Dielli* newspaper, the oldest Albanian newspaper in print form since 1909. VATRA has advocated on behalf of Albanian's globally, made donations to Albanians in need, awarded scholarships for

various financial support, and achieved critically acclaimed recognition amongst its members, the greater Albanian community, and U.S. and Albanian political and business leaders globally.

10. VATRA has also published notable works and journals advocating for a better and independent Albania, committed enormous efforts over decades to support of Albanian people and culture globally.

11. For example, around the time of WWI, an Albanian government vacuum having been created, VATRA was the quasi-government of Albania in exile. VATRA sent its members to Europe to preserve, advocate for and advance Albanian causes and independence. During the 1919 Paris Peace Convention, VATRA was very active lobbying American delegates to advance Albanian national causes. Albanians around the world supported VATRA's 1919 Paris Peace Convention efforts donating more than $150,000. Over its storied history, VATRA has raised hundreds of thousands of dollars for a variety of causes including both political, cultural, and humanitarian causes. As recently as 2019, VATRA supported Albanians suffering the devastation of that year's earthquake. These symbolic and courageous efforts of VATRA to represent and advocate for Albanians and Albanian Americans persists to this day.

12. Lumaj was an activist on behalf of VATRA for ten (10) years until April 19, 2022 when he was expelled from the organization.

13. Prior to his expulsion, Lumaj served as VATRA's Speaker of the Assembly being elected on January 19, 2020.

14. On February 26, 2022, Lumaj voted in favor of electing Dr. Elmi Berisha as VATRA's President, and Lumaj publicly shared his joy on Facebook by promoting the February Assembly as a model Assembly in history.

15. The reason for Lumaj's expulsion from VATRA was his indecent behavior that included insulting other VATRA members on the internet, making threatening statements, bullying

and harassment of other members, and making defamatory statements about VATRA and its members.

**Plaintiff VATRA's Trademark**

16. Plaintiff VATRA owns the exclusive trademark rights to the distinctive VATRA trademark ("VATRA mark") that appears as follows:



17. VATRA has served the Albanian community worldwide dating back at least as far back as its registered formation in 1912 in Boston, Massachusetts. VATRA has been in operation for more than 100 years consistently using the VATRA mark throughout its tenured operation, including on a national and international scale. VATRA's membership hail from around the United States and span across the oceans into Albania and its surrounding region. Similarly, VATRA distributes its 100 plus year-old digital and print newspaper to readers globally.  Its former members include esteemed diplomats, dignitaries, bishops and business and political leaders.

18. VATRA's existence and reputation depends upon the comradery and comity of this constituency of Albanians across the nation and internationally.  VATRA conducts both national and localized conferences and meetings for the advancement of VATRA and its interests. The VATRA mark is emblazoned at each of the VATRA conventions, and throughout all the organization's efforts.

19. The integrity and trust between the hierarchy and its members of the organization compounds the legitimacy of VATRA's endeavor. This relationship of trust further facilitates closure in the minds of its members and constituents that the historical customs and practices toward advocating for Albanians is the unfettered interest pioneering VATRA's efforts and fulfilment of its mission. Current and prospective members associate the VATRA name and VATRA mark with this amalgamation of historical efforts.

20. As a result of this recognition and good will, VATRA maintains a domestic and international reach, which has influenced generations of Albanians to advocate, represent, and further serve the best interests of Albanians across America and the globe. VATRA's incalculable efforts and national customer and membership base is a direct result of, and a reflection of, its national and global reputation, efforts and outreach.

21. For more than 100 years, the VATRA organization and the VATRA mark has been attached to all these efforts garnering VATRA and its VATRA mark incalculable commercial value.

22. Plaintiff owns the exclusive trademark rights to the distinctive VATRA mark, having used the VATRA mark since the association's creation in 1909.

23. Since 1909, Plaintiff's use of the VATRA mark has been extensive, continuous, and substantially exclusive.

24. The VATRA mark has been used by Plaintiff on its documentation provided to members of the association and published to the general public, emails, social media accounts, other media outlets, and websites.

25. Plaintiff uses the VATRA mark on a wide variety of printed materials including its newspaper, *Dielli*, since at least 1909, and on a scholarly publication, *The Adriatic Review,* dating back to 1918.

26. Plaintiff is the producer, editor, publisher, and distributor of the *Dielli* newspaper since 1909. VATRA, through the production and distribution of *Dielli*, and its organization's advocacy efforts has continuously used its name and the VATRA mark since 1909 throughout the United States and globally.

27. The *Dielli* is a daily on-line newspaper and monthly print publication. It is distributed to most of VATRA's 600 plus members for an additional $60 subscription fee. *Dielli* is also distributed to numerous prominent institutions like the Library of Congress and Harvard College for archiving and scholarly examination of VATRA and Albanian history.

28. The *Dielli* provides broad and deep coverage of Albanian related interests and news which range from political affairs to personal anecdotes. The *Dielli* also sells advertisement space for purchase.

29. An additional example of VATRA's continuous use of its name and the VATRA mark includes VATRA's yearly educational grant supporting four to five Albanian students each year. Since the 1960s, VATRA's educational support efforts have cumulatively awarded more than $160,000.

30. Each of these endeavors have been pursued under VATRA's name and in conjunction with the VATRA mark.

31. Plaintiff's VATRA mark is distinctive to both the consuming public, in Plaintiff's trade, and has become distinctly recognizable among its current member and prospective members, the public, including government globally, because of its storied existence, century plus endeavors, and continuous use of the VATRA mark during their undertakings.

32. Plaintiff has expended substantial effort and expense to protect the VATRA mark's distinctiveness in the marketplace. Plaintiff extensively polices unauthorized use of the VATRA

mark and has sent cease and desist letters, and made telephone calls, to combat misuse or unauthorized use of the VATRA mark.

33.     Plaintiff offers and sells its goods and services under its VATRA Marks to any interested consumer, although, primarily to Albanians and American Albanians whom these goods and services are offered to and sold to under the VATRA Marks identifying VATRA as the source.

34.     The goods and services offered under the VATRA name and VATRA mark are of high quality, and this is evidenced by its tenured *Dielli*, and the critically acclaimed recognition amongst its members, the greater Albanian community and U.S. and Albanian political and business leaders globally. It is this notoriety that legitimatizes and deems VATRA as the sole and exclusive representative of this nationally mobilized initiative to represent, advocate and fundraise for Albanians who have reciprocated this trust and recognition to VATRA.

35.     As a result, VATRA and the VATRA mark have acquired incalculable distinction, reputation and goodwill belonging exclusively to Plaintiff.

36.     Plaintiff's VATRA mark and the goods and services offered thereunder have received significant unsolicited coverage in various media, including, and not limited to, an April 6, 2020 article in the Albanian paper, *Tirana Times*.

37.     As a result of its distinctiveness and widespread use and promotion throughout the United States, VATRA and its VATRA mark are a famous mark within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. 1125(a) – (d), and became famous and distinct prior to the acts of the Defendant alleged herein.

38.     As a result of more than a century of efforts, VATRA and the VATRA mark have become uniquely recognizable, famous, and distinctive at state, national, and international levels garnering itself an incalculable, special, unique and distinctive quality and recognition unique and exclusive to VATRA.

39. Plaintiff's tenured use of its name and the VATRA mark has garnered VATRA strong common law rights and statutory protection under the Lanham Act for its name and its VATRA mark.

40. Based on Plaintiff's use, including the use described herein, Plaintiff owns extensive common law trademark rights to the VATRA mark.

41. Defendant has unlawfully used the VATRA mark on publications and documentation that includes, but is not limited to, emails and social media websites, without permission from VATRA.

42. Defendant's unlawful use of the VATRA mark has also been used by Defendant on publications designed to defame Plaintiff and damage Plaintiff's reputation in the public.

**Defamatory Statements Made By Defendant Lumaj**

43. Over the past year and since his expulsion from VATRA, Defendant has made defamatory - even abusive - statements verbally, via email, and on social media websites about VATRA to third parties, which includes, but it not limited to, false allegations of criminal conduct.

44. On or about November 17, 2022, Defendant sent an email in which he made false statements that imply members and officers of VATRA are homophobic, made homophobic statements, and discriminate against homosexuals.

45. On or about March 17, 2023, Defendant sent an email stating a member of VATRA was signing a corporation agreement with Edi Ramen in violation of the Code that does not allow political or economic agreements, except for lobbying and advocacy services for national issues.

46. On or about March 17, 2023, Defendant falsely stated Edi Ramen was accused of crimes such as treason and corruption, and therefore falsely implied that VATRA was entering into an agreement with a criminal.

47. On or about March 10, 2023 and March 17, 2023, Defendant made false accusations that VATRA is attempting to oppress Albanian politics.

48. On or about March 10, 2023 and March 17, 2023, Defendant made false accusations that the President of VATRA, Elmi Berisha, did not receive the necessary votes for a 4-year mandate, and therefore falsely accused the organization of fraudulent conduct.

49. On or about September 13, 2022, March 12, 2023, March 13, 2023 and March 17, 2023, Defendant made false inferences that President Elmi Berisha did not earn a higher education degree as represented on his *curriculum vitae*, and therefore does not possess the required educational background to be President of VATRA.

50. On or about September 13, 2022, March 12, 2023, March 13, 2023 and March 17, 2023, Defendant falsely accused President Elmi Berisha of lying about his education to the public.

51. Defendant's false and defamatory statements have damaged VATRA's reputation, in addition to the reputations of its members and officers, within the community.

52. As a result of Defendant's false and defamatory statements, outside organizations have withdrawn their sponsorship and contributions to VATRA.

53. As a result of Defendant's false and defamatory statements, some VATRA members have discontinued their payment of dues.

54. VATRA has sustained financial damages because of Defendant's false and defamatory statements.

55. As result of Defendant's false and defamatory statements, the reputation of the Plaintiff has been undermined and compromised.

**COUNT I**
**TRADEMARK INFRINGEMENT**
**15 U.S.C. § 1114**

56. Plaintiff repeats and re-alleges each and every allegation contained above and incorporates them into this count as if specifically alleged herein.

57. Defendant's use on the VATRA mark and variations thereof, is likely to cause confusion, mistake, or to deceive, and is likely to deceive the relevant public that Defendant is authorized, sponsored or approved by, or is affiliated with Plaintiff.

58. The above-described acts constitute direct trademark infringement of the VATRA mark and false designation of origin in violation of 15 U.S.C. § 1114(1).

59. Defendant had actual notice of the infringement described herein, namely that Defendant's use of the VATRA mark in defamatory statements about Plaintiff, was infringing Plaintiffs' rights.

60. Despite knowing about the infringing conduct, Defendant continued use of the VATRA mark and has materially encouraged, enabled, and contributed to the infringing conduct.

61. Defendant has direct control over the infringement of Plaintiff's rights and Defendant is the party who has been publishing the statements containing the VATRA mark within them.

62. Defendant is therefore liable for the use of VATRA's mark in violation of 15 U.S.C. § 1051, et seq. and common law.

63. By reason of the above-described acts of Defendant, Plaintiff has suffered damage to the goodwill associated with the VATRA mark.

64. The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiff and the VATRA mark.

65. The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm the general public which has an interest in being free from confusion, mistake, and deception.

66. By reason of Defendant's acts, Plaintiff's remedy at law is not adequate to compensate it for the injuries inflicted by Defendant. Accordingly, Plaintiff is entitled to entry of a temporary restraining order against Defendant and preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

67. Because the above-described acts of Defendant were willful, Plaintiff is entitled to damages, and that those damages be trebled, under 15 U.S.C. § 1117.

68. This is an exceptional case making Plaintiff eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

## COUNT II
## TRADEMARK INFRINGEMENT AND FALSE DESIGNATION
## 15 U.S.C. § 1125(a)

69. Plaintiff repeats and re-alleges each and every allegation contained above and incorporates them into this count as if specifically alleged herein.

70. Defendant's use of the VATRA mark is likely to cause confusion, or to cause mistake, or to deceive the relevant public that Defendant is authorized, sponsored or approved by, or are affiliated with Plaintiff.

71. The above-described acts of Defendant constitute direct trademark infringement of the VATRA mark and false designation of origin in violation of 15 U.S.C. § 1125(a), entitling Plaintiff to relief.

72. Defendant had actual notice of the infringement and false designation described herein, namely that Defendant's use of the VATRA mark in connection with Defendant's defamatory statements against Plaintiff was infringing Plaintiff's rights.

73. Despite knowing about the infringing conduct, Defendant has materially encouraged, enabled, and contributed to the infringing conduct.

74. Defendant has direct control and monitoring over the instrumentality used to infringe Plaintiffs' rights. Among other things, Defendant has been and continues to use the VATRA mark when making defamatory statements about Plaintiff to the public.

75. Defendant therefore is liable for the use of the VATRA mark in violation of 15 U.S.C. § 1051, et seq. and common law.

76. By reason of the above-described acts of Defendant, Plaintiff has suffered damage to the goodwill associated with the VATRA mark.

77. The above-described acts of Defendant has irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiff and the VATRA mark.

78. The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm the general public which has an interest in being free from confusion, mistake, and deception.

79. By reason of Defendant's acts, Plaintiff's remedy at law is not adequate to compensate it for the injuries inflicted by Defendant, Plaintiff is entitled to entry of a temporary restraining order against Defendant and preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

80. Because the above-described acts of Defendant were willful, Plaintiff is entitled to damages, and that those damages be trebled, under 15 U.S.C. § 1117.

81. This is an exceptional case making Plaintiff eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

## COUNT III
## DEFAMATION

82. Plaintiff repeats and re-alleges each and every allegation contained above and incorporates them into this count as if specifically alleged herein.

83. Defendant published false and defamatory statements concerning VATRA and its members with a knowing and reckless disregard of the truth. Without limitation, these statements include the following:

- On or about November 17, 2022, Defendant sent an email in which he made false statements that imply members and officers of VATRA are homophobic, made homophobic statements, and discriminate against homosexuals.

- On or about March 17, 2023, Defendant sent an email stating a member of VATRA was signing a corporation agreement with Edi Ramen in violation of the Code that does not allow political or economic agreements, except for lobbying and advocacy services for national issues.

- On or about March 17, 2023, Defendant falsely stated Edi Ramen was accused of crimes such as treason and corruption, and therefore falsely implied that VATRA was entering into an agreement with a criminal.

- On or about March 10, 2023 and March 17, 2023, Defendant made false accusations that VATRA is attempting to oppress Albanian politics.

- On or about March 10, 2023 and March 17, 2023, Defendant made false accusations that the President of VATRA, Elmi Berisha, did not receive the necessary votes for a 4-year mandate, and therefore falsely accused the organization of fraudulent conduct.

- On or about September 13, 2022, March 12, 2023, March 13, 2023 and March 17, 2023, Defendant made false inferences that President Elmi Berisha did not earn a higher education degree as represented on his *curriculum vitae*, and therefore does not possess the required educational background to be President of VATRA.

- On or about September 13, 2022, March 12, 2023, March 13, 2023 and March 17, 2023, Defendant falsely accused President Elmi Berisha of lying about his education to the public.

84. Some of the above statements made by Defendant are defamatory *per se* in that the statements falsely accuse Plaintiff and its members of committing crimes, including fraudulent conduct.

85. Defendant compounded his wrongdoing by continuing to publish such defamatory statements, and by failing and/or refusing to retract such statements even after he was notified that such statements were false and defamatory.

86. In doing do, Defendant's false and defamatory statements subjected Plaintiff and its members to ridicule and scorn, damaging the association's reputation. The consequences of the false allegations have been harmful to Plaintiff and its members.

87. As a result, Defendant is liable for damages to Plaintiff.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff, The Pan-Albanian Federation of America Vatra (The Hearth) Inc., respectfully pray that this Honorable Court:

A. Enter judgment against Defendant, Valentino Lumaj, on all counts so alleged;

B. Award money damages in an amount to be proven at trial;

C. That the Court issue a temporary restraining order, preliminary injunction, and permanent injunction enjoining and restraining Defendant and his agents, servants, employees, successors and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendant from:

  i. Engaging in, or contribution to, any infringing activity in connection with the VATRA mark or any similar mark;

      ii.    Using any mark that is identical or confusingly similar to the VATRA mark;

      iii.    Engaging in any deceptive acts; and

      iv.    Making false and defamatory statements about VATRA and/or its members.

D. That Plaintiffs be awarded damages for trademark infringement and unfair competition and that these damages be trebled due to Defendant's willfulness, in accordance with the provisions of 15 U.S.C. § 1117.

E. Award costs, attorney fees, interest, pre-judgment and post-judgment interest at the statutory rate, and litigation expenses recoverable pursuant to contract, at law, by statute or in equity in an amount to be determined at trial; and

F. Award such other relief as this Court deems just and appropriate.

## JURY DEMAND

The Plaintiff, The Pan-Albanian Federation of America Vatra (The Hearth) Inc., hereby demands a trial by jury on all issues so triable.

Respectfully submitted,
The Pan-Albanian Federation of
America VATRA (The Hearth) Inc.,
By its attorney,

Date: October 27, 2023

   /s/ Darius Pakrooh
Darius Pakrooh, Esq. (BBO 691599)
PAKROOH LAW, P.C.
90 Canal Street, Suite 400
Boston, MA 02114
(617) 874-1410
darius@pakroohlaw.com